Thank you, Judge Wardlaw, and may it please the Court. My name is Brayden Morell. I'm here for Transamerica. I intend to reserve five minutes for rebuttal. Two things have changed since briefing closed in this appeal, and both changes confirm that the District Court's order remanding this case to State Court should be vacated. First, this Court decided in the related Ruiz appeal that a defendant must be provided the opportunity to waive the adequate legal remedies defense in opposition to a plaintiff's motion to remand an equitable relief lawsuit to State Court. Well, did they say that quite as strongly as you've just stated it, or had that argument been made before the District Court, because it doesn't seem that Transamerica made the argument here until the reply brief on appeal? Your Honor, I would point the Court to this Court's decision in Young, which applied Ruiz, and despite being unpublished, did use the phrase, did use the terminology must be provided that I used just now. The Ruiz decision itself did not use that phrase, but parts of the Ruiz decision make clear to the extent the Court is getting at whether there is some discretion about whether or not to provide that opportunity to a defendant. There are parts of the Ruiz decision that make very clear that that opportunity must be provided. The Ruiz decision mentions, for example, that a defendant's waiver would defeat a motion to remand, and that the case would then normally proceed in the District Court in the normal course. That's at 918 of the Ruiz decision, and so if a defendant's waiver can defeat a motion to remand, and the case must proceed in federal court, then the defendant, or then as this Court stated in Young, in interpreting Ruiz, that necessarily means the defendant must be provided that opportunity, and in Young itself, just as here, the intervening decision of Ruiz obviously changed things, and so this Court said in Young, maybe the defendant there didn't attempt to make this waiver in the District Court, but now that we have Ruiz, now that we have hindsight, we can look back and say, well, they need to be provided that opportunity on remand, and obviously that wasn't provided in this case for the same reason. I mean, at that time, we were living in the world in which our briefs were written in this case, which is whether or not this is waivable, whether or not this is like a subject matter jurisdiction defect, and the argument we made in the District Court was effectively the same conversation we're having before the Court today. There's been no backtracking on positions or changing of positions. The argument we're making today, particularly prompted by the Court's questions, will be mostly focused on whether or not this case could proceed going forward, and that's what we were addressing in the District Court at the time, because, again, we didn't have the benefit of this Court's decision in Ruiz, knowing that we had the opportunity to waive that defense. And speaking of the Court's questions, if I've adequately answered your question, Judge Beatty. Yes, you have. Thank you. Okay. The answer to the Court's first question is, yes, the estate's single UCL cause of action is moot as a result of Mr. Rogoff's death, which happened, of course, while this case was pending on appeal. There are two types of relief requested in the complaint, injunctive relief and restitution. Mr. Rogoff's death moots both of them. The general rule is that prospective injunctive relief does not survive the death of a plaintiff. That general rule applies to the requests made in the complaint here. At paragraph 78, the complaint requests injunctive relief reviving Mr. Rogoff's policy. That is obviously no longer possible now that Mr. Rogoff's passed away. There's no life for Transamerica to ensure. Paragraph 79 of the complaint requests an injunction seeking relief to stop Transamerica from violating the lapse statutes at issue. Again, a court can't grant that relief. There will never be a policy to lapse or terminate such that the statutes will never be triggered as to Mr. Rogoff in the future. Isn't the mootness, part of the mootness analysis for our purposes, mootness on appeal, which under Garcia turns on whether we can provide any relief. What you've just outlined sounds to me like merits questions or questions for the district court to sort out whether, this was a putative class action, so the death of the named plaintiff can't be the death knell of the case. There could be a substitution, another named plaintiff could be identified. Not in our court, not before us. But you had sought a vacature of the district court's order because you didn't want the case remanded. If we did that, we could give you the relief that you're seeking. We could send it back vacating the district court's order. You would then have the release issue to argue as well. We can still provide relief to you, and so it seems that the appeal itself is not mooted regardless of whether we don't reach all the merits issues that you're arguing. That's exactly right, Your Honor. The appeal itself is not moot. The traditional rule under Munsingware is that when the underlying claims are mooted by circumstances outside of the party's control, which is exactly what happened here, it's the general principle that this court follows is to vacate the judgment below. Otherwise, Transamerica would be aggrieved by a judgment that it had no fault in causing to be, the claims causing to be moot while this case was on appeal. I understand, maybe the court isn't willing to go there today, but I would say that there's also the possibility that the court could direct dismissal of the causes of action if it does vacate the remand order in this case because of the mootness I was just discussing. I'd point the court to its decision, which we'd be happy to submit in a supplemental filing in Pitts v. Terrible Herbst, where the court noted that the rule pre-certification of a class is that a court doesn't actually have to consider the claims of absent class members unless the claims are inherently transitory or could repeat in the future such that they'd be capable of repetition yet evading review. So they've alleged that there are thousands of people in this circumstance who would be members of this class, and we've certainly seen a great deal of litigation about these policies and determination and whether notice was provided. So it doesn't seem entirely far-fetched to think that there could be another plaintiff who could be the class representative. I agree with Your Honor's insight that it's not entirely far-fetched. Obviously that person hasn't been presented. Mr. Rogoff was alive, so that puts the defendants in a rather unfair position as well that because the named plaintiff has passed away, the entire class is lost. Yes, Your Honor, but I would just, again, I think we're so early in this case that usually when courts are concerned about the potential claims of absent class members, it's further along. It's closer to certification, and particularly after certification, a party has the ability to say, well, my individual claims, I understand, are moot, but courts recognize there's like a second concern that the class somewhat vests in the class at a certain point in litigation. Here we're at a motion to remand stage. This case was not pending in the district court for very long at all, and obviously now the named plaintiff, the named class representative's claims have been mooted by the death of Mr. Rogoff. So why shouldn't we have the district court sort this out? Why should we do that on appeal? One reason, Your Honor, is that there's no concern here that there won't be relief granted under these policies to the proper person who could seek relief. The plaintiff here is the estate, but upon Mr. Rogoff's death, the right to seek the policy's benefits vested in the beneficiary. That's Mrs. Rogoff. She's obviously not before the court. She may have claims of her own. Just in full candor to the court, this is in the district court record in a filing after this appeal was filed, Documentary 33. Mr. Rogoff's policy was in force at the time that he died, actually even at the time of the court's remand order, and so Mrs. Rogoff, in her status as beneficiary, has a right under the policy to those benefits, and those benefits will be paid to Mrs. Rogoff. So there's no concern in this case. Does she have an independent claim, or that you're saying she's received what she's entitled to under the policy? All I'm saying is she does. She conceivably could have claims as the beneficiary in her status as beneficiary, such that if this court were to rule that on remand, these claims can be dismissed, there's no concern. All I was trying to say is there's no concern that there's no relief available arising out of this circumstance, and then I was also pointing out, I mean, there's practical reality is that Mrs. Rogoff is going to get these policy benefits. But still it seems like there's no harm from having the district court make that assessment in the first instance. The primary relief we are seeking today is vacature of the remand order. That's compelled by Ruiz, and then on remand, as we mentioned in our 28-day letter, we would the adequate legal remedies defense, and could pursue these merits arguments that we're talking about today. But I do think the court's two questions highlight that it could also reach the fact that on remand the district court may well have no option but to dismiss these claims, or this single cause of action, requesting two forms of equitable relief. I see that within the time I was intending to reserve, so I will reserve the remaining time. Good morning, Your Honors. And may it please the court, Alex Tomasevic for Appalese, the Rogoff family. While Ruiz confirms the power to remand, meaning that the district court got it right when it ordered remand, it does not grant defendants an eternal right to waive defenses they strategically deployed and held onto for the better part of two years. Here Transamerica engaged in a heads-I-win, tails-you-lose gamesmanship, fighting for dismissal on the merits at every stage, even standing before you here today saying, hey, by the way, can you throw in a dismissal on the merits in your instructions to the lower courts, while still holding a waiver in its pocket that it knew it had the right to deploy but didn't. And the delay here has real costs, because during the two years of delay and litigation and resources spent at the district court and at this court level, Mr. Rogoff died, losing claims, losing the ability to see if his family would be satisfied with his claims for his all-important life insurance benefits. So, counsel, why do you say that they were holding onto this waiver of the inadequate legal remedies defense? This all happened before Ruiz. Ruiz was decided after briefing in this case. In short, Ruiz was not a change in the law at all. Ruiz expanded upon, in some instances, authorities that are 200 years old, and in terms of this waiver argument that Transamerica is now, today, at this late hour, relying on, over 100 years. Let me walk through that a little bit. That may be. Certainly, there's long-standing precedent with respect to claims in law and equity. But the courts have been grappling over the last few years with what relief is available, what claims are available, and sort of came to a head in Sonar, then Guzman, Sonar 2, and now Ruiz, whether those were issues of subject matter jurisdiction, equitable jurisdiction, whether it can be waived. It was a live issue, whether it could be waived, and that's what Ruiz decided, that the defense could be waived. I would push back on that a little bit, Your Honor, and I don't have to do that, I don't do that alone. Transamerica was pushing back on that at every stage in this litigation. Did the issue arise before the district court? At some point, was there some discussion, some briefing, some motion, something about a waiver of the defense? You seem to be saying that Transamerica should have known that this was an available waiver that they could make, and they didn't. Not only should they have known, they did know, Your Honor, and I could walk through that and why the record is clear on that, and why Transamerica doesn't meet its burden to show that it was never afforded an opportunity. And the rule we have to remember from page 918, we agree on the Ruiz opinion, is that they simply need to be afforded an opportunity to waive. They even cited the Ruiz district court opinion and this discussion that we are having now in the district court below, yet they didn't actually say, we want to waive. Rather, they saw at all times the district court dismissal on the merits. They wanted the court to give either an advisory opinion or an actual dismissal that restitution was not available, the UCL cause of action was not available because legal remedies were available and we were masquerading restitution claims that were really damages claims. We know the district court recognized their arguments as dismissal arguments and not waiver arguments or preserving of waiver because the district court itself at ER 6 and 7 said, these are dismissal arguments, you're asking for merits arguments and that's not for this court to decide. Also at their opening brief here at this level, they asked this court to interpret SONAR 2 to mean that dismissals for lack of equitable jurisdiction are on the merits with prejudice. They go further on page 46 of their brief and say that Guzman, to the extent it says these dismissals are not with prejudice, that decision should be overturned to make them with prejudice. And to get more succinct on this issue of how they knew there was a waiver, I said already that below they cited the Ruiz case, the district court case. In their opening brief here, they cited at page 30, 55 and 56 and made the argument that they can waive the equitable jurisdiction requirement. This is a quote from Transamerica's brief. Transamerica could waive. Of course, they don't waive. They acknowledge that right to waive again in their reply at pages 12 and 22 of their reply brief. And again, they don't waive. And how they tee this argument up in their briefs is they cite these old cases, Pusey and Jones Company versus Hanson and Twistweed Prairie Oil and Gas Company, which are 1923 and 1927 cases, saying that Transamerica has the right to waive. Yet, they don't waive. Why? Because they were banking on a win on the first arguments, that on the merits, a UCL remedy is not available and the case should be dismissed with prejudice as they argue here again today standing before you. So, in short, they did not raise it in any of their briefs. They did not raise it below up to district court, even though they knew they had the right to. They pointed it out in their briefs. And they did so for a strategic advantage, keeping us here for two years while in the interim, the plaintiff dies and the parties' positions change measurably in their favor. Right. But now, there isn't any equitable relief that can be awarded to your client, right? I would disagree with that as well, Your Honor. You would, isn't it? I would. So, I do agree with the defense that there are two forms of relief generally, restitution or money, and injunctive relief. As to the first piece, money, the default rule in California is that claims for money survive the death. His estate can go seek the money. The money from the perspective of the policy owner, Mr. Rogoff, the deceased here, needs to be kept separate from the benefits that the beneficiary is claiming, the face value of the policy starting at $100,000. Insurance is really two products in one, right? The owner, Mr. Rogoff, the deceased, had a protection product, peace of mind. He paid monthly premiums. He had coverage in case of his death that his family would be taken care of. He did not receive that protection because they wrongfully terminated his policy, the core theory of our case. He submitted payments that we think are capable of restitution, and they are not mooted by his death. The money piece is not mooted by his death. It could also be addressed through a breach of contract argument or claim by his estate, which means there's an adequate remedy of law, equitable jurisdiction is lacking, and the remand order was thus appropriate. But the restitution claim definitely survives, even though it's quote, unquote, equitable. The injunctive relief piece, the defendants are probably right that that doesn't survive because he can't possibly buy another policy or be injured again. But that just proves that the district court got it right. This mootness argument is really a standing argument. The district court found correctly, although it got there in a slightly different fashion, that there was no standing for the injunctive relief claims. Well, now his death proves, and I heard Transamerica concede, that the district court was absolutely right. He has no standing to pursue injunctive relief claims because he can't possibly be injured again. That's an Article III problem. The district court found as much. There's no subject matter jurisdiction. It's not for the district court to handle these things anymore because now everybody agrees, the district court has no power to hear this. It needs to go and stay in the state court where there is no Article III problem. Now that, I think, answers the court's question submitted in the court's minute order, asking us to deal with the mootness and whether or not there are any remaining claims and if there are any adequate remedies along what that means. A quick note on Young, which they cited in a belated 20-J letter, why Young is not something that should be followed or anointed into some kind of published or stronger opinion here today. So, Transamerica's interpretation of the Young decision, or I should say, the one sentence of dicta in the unpublished Young decision is that unless the district court expressly invites a waiver, perhaps by using some magic words or incantation, some kind of Miranda type of warning that, you know, you better waive or we're going to remand you, then the waiver right exists indefinitely and in perpetuity. Such a rule creates many more problems than it solves. Of course, it invites delay, like the two years of delay we have here. But if you look closely at Young, it really just cites Ruiz at 918. And Ruiz simply says the defendant must be afforded an opportunity to waive. I walked through why they had the opportunity for two years to waive and they didn't do it. And it wasn't a change in law that Ruiz ushered in. It's been 100 years that they've known they've had this right. Transamerica cites no other case, furthermore, nor even an analogous situation where district courts are instructed by circuit courts to provide magic words or final warnings before a waiver happens. And what's critical to read in Ruiz, I think on this point especially, Your Honors, is how Ruiz got to its conclusion about why and how waiver is afforded. It got there by citing two very important things that are analogous here. One, that there is classically a right to waive personal jurisdiction. That's important here and speaks to the soundness of the district court's opinion because we all know that personal jurisdiction, if you want to avail yourself of that defense, like defendants want to avail themselves of waiving equitable jurisdiction here, you have to do so at the earliest opportunity. Not indefinitely, not two years later after parties have died, but you have to assert a personal jurisdiction defense essentially in your first appearance. Also, the district court cites in Ruiz that, forgive me, that's the Pusey and Jones case, which I mentioned earlier. The Pusey and Jones case, which 100 years ago said that Transamerica has the right to waive this jurisdictional defense, says that when equitable jurisdiction is being raised by the defendant, it must be done, quote, seasonably. So to adopt Transamerica's position today, or their overexpansive view of the Young case, would essentially read out the Supreme Court's instruction that equitable jurisdiction defenses must be handled seasonably, would ignore this court's thoughtful discussion in Ruiz that this is analogous to a personal jurisdiction issue. And we all know that personal jurisdiction issues must be raised seasonably or the defendant loses them. And so what the court should do here is essentially say that, well, Transamerica has not proven on this record that it had no opportunity to waive the defense. It didn't brief it. It pointed out that it had a waiver without actually waiving anything, therefore, it's trying to have its cake and eat it too. And that on this record, Transamerica has not shown error at the district court. If the court wanted to issue a rule on when the waiver needs to be perfected, it shouldn't adopt the nebulous dicta in Young, as I pointed out, or for the reasons I pointed out. Rather, it can simply say, like with personal jurisdiction, like as discussed in the Pizzi case, it must be waived at the earliest opportunity, or at least before the district court orders the remand, which Transamerica had the power to do, chose not to. They cannot run to the waiver portion of the Ruiz case here. Unless the court has any further questions? I guess I have some questions, because this is a punitive class action. There are some things that sort of made even further complications in the case. And that when Mr. Rogoff was alive and proceeding as a would-be class representative, he was waiving claims on behalf of the absent class members. And that seems that to raise an issue of whether a class certification effort would go forward and whether the basis for remand would survive a class certification. So he was waiving any claim for legal relief. He was seeking just equitable relief, so that he could essentially litigate this case in state court. But what happens when the class members are present? Well, so, Your Honor, again, I think we're spotting Transamerica arguments it never made before that we never had a chance to brief. Which we'd love the opportunity to do if the court were concerned about these issues. But it really makes no difference here, because for the same reasons that equitable jurisdiction is lacking, the class loses nothing by substituting the word restitution for damages here. Because the restitution covers completely what someone would get in damages. The benefits, the return of the premium, are called damages. And it's because they could all be called damages that legal remedies exist, and equitable jurisdiction is lacking. As confirmed in your Honor, Sonatu, Guzman, Key. What I'm perhaps hearing, forgive me if I'm misinterpreting as well, does that make Rogoff adequate? Or why should we let him waive these things? Because my answer, in short, is that he's waived nothing of consequence. He has, as master of the complaint, as the Supreme Court recently in the Royal Canning case confirmed, is the plaintiff's prerogative to be, he has chosen certain theories that he thinks give him and the class a better shot at winning. So how does the standard fire case play into this, where the court was sort of rejecting the notion that the class representative could make waivers on behalf of the absent class as a way to determine which court would have jurisdiction? I think it goes back to this notion that there's no waiver of anything of consequence. And in fact, Mr. Rogoff, because of the Ninth Circuit's recent opinions in cases like Small and Early, which are, I should say, have a dim view of certification of these cases under certain circumstances. He's actually doing the class a favor and exercising and showing his adequacy and his championing of the class's rights by trying to stay in state court, where there are better remedies available and he loses nothing. So I think standard fire is distinguishable on those grounds. If the court would like further briefing on standard fire, which again, I don't even think the defendants have ever raised, happy to do that as well, Your Honor. So, Mr. Rogoff's passing has been a complication in a lot of ways. But if he were still alive, you had argued that, and the district court accepted the argument that there wasn't injunctive relief in the form of a mandatory injunction to reinstate the policy because it had already been terminated and it couldn't happen again. You couldn't terminate the policy twice. But that to me seems to be wrong because the policy could have been reinstated and then terminated again. But now that he's deceased, his policy can't be reinstated. So that seems to address that part of equitable relief that was available. But what about the class members and their ability to have policies reinstated? It still seems that there's equitable relief available for the absent class members. Well, I agree that currently unknown class members may have some avenue to equitable relief, but they are irrelevant for the purposes of the equitable jurisdiction analysis here before this court today. Because, quite simply, they're not before the court. They're not certified. Are you saying that this should be resolved in the district court? With Mr. Rochaff's passing, things have become more complicated. Why shouldn't the district court sort that out in the first instance? Well, I would say it should be resolved in the state court because the remand was appropriate and the state court is well equipped to handle these issues. But what I'm struggling with, and you'll have to forgive me, is that I think you're anticipating motions from Transamerica or defenses they haven't even raised yet on a class certification motion or an adequacy inquiry that may never come about. And as was raised earlier by this panel, it's probably not in the name of Mr. Rochaff because he is now dead. And I don't know if I'd have to look at how adequate a dead representative could be, not sit for deposition, not show up at trial. I don't think anybody's suggesting that he could be the representative after he's passed away. But, I mean, we don't know what the parties intend to do. So there's no reason that we need to know if this were to be remanded to the district court or to state court whether the plaintiffs are going to seek another class representative or seek certification. Well, this isn't in the record again, but they would seek another representative or they would, and for a while we have the representative of Mr. Rochaff still there ready to champion the rights as already approved by their motion to substitute in this court. Now, that may create some wrinkles for the defendants to raise hitherto unseen. It sort of dovetails with the Pitts versus terrible Herbst case, cited for the very first time by defendants here today. That case is part of a long line of cases including Chen versus Allstate, which basically says that cases are not mooted by, those are complete relief cases. What I mean by that is the plaintiffs in both cases were offered by the defendants, ironically other insurance companies in the Chen versus Allstate case, complete relief. They dropped off a check once they realized they had exposure to class claims and a much bigger problem on their hands. So they decided to try and pick off the plaintiff and therefore moot the claims. It wasn't mooting by death, it was mooting by saying, here, take all the money and now please dismiss your class case. And in both of the cases, Pitts and Chen versus Allstate, this court held, I believe unanimously, that that's not a tactic that can be entertained. It flies in the face of rule 23, even if the plaintiff accepts complete relief. He still has an interest in the action insofar as he wants to get relief for his fellow class members, which has not been provided by the defendants here and was not in those cases. So even the affording of complete relief does not necessarily moot, at least the money claims in those cases, because there's still a right to pursue class claims. And so this court need not worry about mootness or whether the district court will wrestle with mootness. There are live claims. The live claims are for money, but there are adequate legal remedies, which means there's no equitable jurisdiction. And under Ruiz, the district court was correct in assessing that and remanding. And as far as the injunctive relief claims are concerned, it's true that the current plaintiff can't be heard again, but that only cements that the district court got it right. That subject matter jurisdiction or Article III jurisdiction was lacking, and at least that part of the district court's decision can't be disturbed. All right, you're well over your time, so thank you, counsel. Thank you for your generosity with the time. Sure. Thank you, Your Honor. Three quick points. On the waiver arguments, I just want to take a step back and make sure I understand. So the district court thought the error here was a subject matter jurisdiction error. There's no question if you look at the district court's order, it conflated equitable jurisdiction with subject matter jurisdiction. Our briefing in this case focused on the fact that this defect was waivable to demonstrate, as Ruiz agreed, that it was not a subject matter jurisdiction defect. Transamerica has never, never, not at any point, suggested that it would not waive the adequate legal remedies defense. The opportunity was not apparent to do so until after Ruiz, and in our citation, the 28-J letter we filed in this court, we indicated our intention to do that on remand to the district court if necessary. On the restitution piece, which my friend on the other side called the money piece, the only category of restitution he mentioned that might still be alive is restitution for return of premiums. That's not restitution under California law. Transamerica did not take that from Mr. Rogoff. It cannot restore that to his possession. Mr. Rogoff paid premium payments. He received insurance coverage. It would be a windfall to give him back those premium payments because that was his performance under the contract between the parties. This is not like Sonner, as Judge Beatty was getting to. This is not like a false advertising case in Guzman and Ruiz where restitution is actually statutorily provided as damages. That's not here. The CLRA permits you in that context to get your money back. Mr. Rogoff has no statutory right to restitution in the form of money damages. The last thing, or at least the third point, is the standing argument that my friend on the other side made. Obviously, standing for purposes we're talking about here today is standing whether this changed on appeal, but for the purpose of removal, standing is evaluated at the time of removal. Our argument is not that Mr. Rogoff did not have standing to seek injunctive relief at the time this case was removed. We briefed this issue at the time, as Judge Beatty pointed out. He had standing to seek injunctive relief to have his policy put back in force. He also sought standing to prevent Transamerica from violating the statutes. He says that isn't available to him because he faced no prospect of future harm, but that's inconsistent with the theory of the complaint, which is actually that his policy never lapsed in the first place. If on no other date than the date of his death, he would be harmed again by Transamerica's failure to comply with the statutes. That was at the time of removal, which obviously, as we sit here today, things have changed. Mr. Rogoff has passed away. As we discussed in my initial time, his claims are moot due to the fact that he has passed away. If the court has no additional questions, those were the points I wanted to raise. All right. Thank you very much, counsel. Thank you. Rogoff v. Transamerica Life Insurance Company is submitted. Thank you.
judges: WARDLAW, BADE, THOMAS